IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| John D. Horton,  )<br>  )<br>         Plaintiff,  )<br>  )<br>vs.  )<br>  )<br>Michael B. Donley,  )<br>Secretary, Department of the Air Force,  )<br>  )<br>         Defendant.  )<br>_____) | C/A No. 3:07-2316-MBS-PJG<br><br><br><br>**REPORT AND RECOMMENDATION** |

This employment discrimination matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC on the parties' cross motions for summary judgment (Docket Entries 53 & 59.) The plaintiff, John D. Horton ("Horton"), a Hispanic male, filed this action pursuant to 42 U.S.C. §§ 2000e et seq. alleging unlawful discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"). Horton further seeks damages and equitable and other relief pursuant to 42 U.S.C. §§ 1331, 1343, and 1981. Specifically, Horton alleges that the defendant has "engag[ed] in direct and indirect acts of anti-EEO terrorism against the [plaintiff]." (Compl., Docket Entry 1 at 8.)

The defendant has moved for summary judgment. (Docket Entry 53.) By order filed September 8, 2008, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), Horton was advised of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately. (Docket Entry 54.) On October 14, 2008, Horton filed a response and a cross-motion for summary judgment. (Docket Entry 59.) On November 12, 2008, the defendant

responded to Horton's cross-motion for summary judgment.[1] (Docket Entry 63.) The motions are now before the court for a Report and Recommendation.

The court finds, as more fully discussed below, that the Title VII claims raised in the instant Complaint have not been properly exhausted, as they are distinct claims from the ones originally raised by Horton in an administrative complaint with his employer dated May 25, 2000, which was later reinstated following resolution of a related claim Horton filed in this court. Further, the court cannot provide any further relief for Horton's breach of contract claim raised in the instant Complaint. Accordingly, the defendant's motion must be granted and Horton's cross-motion must be denied.

---

[1] Horton objected to the defendant's response to his cross-motion for summary judgment, arguing that it was not timely filed pursuant to Local Civil Rule 7.07 DSC, and asks that the court strike this response. (Docket Entry 67.) Local Civil Rule 7.07 DSC provides that replies shall be filed within five days after service of the response to a motion. Upon review of the filing, the court observes that it is not a reply; rather, it is the defendant's response to Horton's cross-motion for summary judgment. Therefore, under Local Civil Rule 7.06 DSC , the defendant's response would be due within fifteen days after service of the motion. The defendant's response to Horton's motion was not timely filed under Local Rule 7.06 DSC, and it does not appear from the docket that the defendant sought or obtained an extension of time. Accordingly, it appears that the defendant's response (Docket Entry 63) to Horton's motion was untimely and, therefore, it is not being considered by the court.

## PROCEDURAL BACKGROUND[2]

While this case has a complicated and tortuous procedural history, the court finds the following facts to be pertinent to resolution of the motions currently pending before the court. Beginning on August 30, 1999, Horton was employed at Shaw Air Force Base as a Library Technician (Medical). On March 15, 2000, Horton was notified that he would be terminated effective March 22, 2000. This termination occurred during Horton's one-year probationary period. On March 20, 2000, prior to the effective date of Horton's termination, the Installation Commander indefinitely restricted Horton's access to Shaw AFB based on her finding that Horton's "presence on this installation is detrimental to good order and safety." (Docket Entry 53-5.) Horton appears to have requested that the Commander of the 20th Medical Support Squadron, Lt. Col. O'Shea, review the decision to terminate him, and on March 21, 2000, the Commander upheld the decision to terminate Horton. (Docket Entry 53-6.)

Around March 16, 2000, Horton initially contacted an office of the Equal Employment Opportunity Program of the Department of Defense ("EEO") and submitted a document entitled "Charge of Discrimination." (Docket Entry 53-7.) On May 25, 2000, Horton filed a formal complaint alleging discrimination based on race, sex, and retaliation ("EEO Title VII Complaint").

---

[2]The underlying facts in this matter were first raised in this court in C/A No. 3:03-2443-MBS, which was ultimately dismissed pursuant to a consent order ("Consent Order") following mediation. As an initial matter, in Horton's cross-motion for summary judgment, he objects to each and every exhibit attached to the defendant's motion for summary judgment on the grounds that they are not authenticated. However, Horton undermines this objection by submitting at least one of the documents he objects to as an exhibit to his cross-motion for summary judgment, albeit with different handwritten notations. Another exhibit is the final consent order from Horton's previous federal court case, of which the court may take judicial notice. Further, many of these documents appear to be part of the record before the EEO or OFO and several are decisions issued by the EEO. These documents form the basis of this action. Therefore, these documents are properly considered by the court.



(Docket Entry 53-8.) In this EEO Title VII Complaint, Horton alleged discrimination based on race (Hispanic), sex (male), and "retaliation for making a protected EEO disclosure."[3] (Id. at 1.) On September 13, 2000, Horton entered into an EEO Negotiated Settlement Agreement ("Negotiated Settlement Agreement") settling this claim, which provided in pertinent part:

> 3. The Agency and the complainant agree that:
> a. The complainant will submit a Letter of Resignation for personal reasons to be effective 22 March 2000[.] The Letter of Termination dated 15 March 2000 will be removed and all records pertaining to the termination will reflect the same.
> b. The agency will provide Letters of Recommendation to complainant from LtCol Sylvia Pringle and LtCol Donald Hatcher similar in nature to the interviews they provided to the EEO Counselor dated 12 April 2000 and 14 April 2000.
> 4. No reprisal action will be taken against the complainant in any way due to his participation in a protected activity. Complainant's signature on this agreement constitutes full and complete settlement of the above captioned EEO complaint and therefore, constitutes withdrawal of the above captioned EEO complaint. In addition, the complainant agrees to waiver [sic] his rights to pursue administrative or judicial action in [a] forum concerning the matters raised in the complaint, which include any matters that occurred prior to the execution of this settlement agreement, and that they will not be made the subject of future litigation.

(Negotiated Settlement Agreement, Docket Entry 53-11.) Further, the Negotiated Settlement Agreement provided that if Horton believed that Shaw AFB failed to comply with this agreement, he "may request the terms of the settlement agreement be specifically implemented or alternatively,

---

[3] While Horton's EEO administrative case was pending, Horton appealed his termination to the Merit Systems Protection Board ("MSPB") in April 2000, alleging marital status discrimination. (Docket Entry 53-9.) The Administrative Judge dismissed Horton's appeal after determining that Horton "failed to set forth a non-frivolous claim of marital status discrimination." (Docket Entry 53-10 at 4.) This became the final decision of the MSPB Board on September 21, 2000. (Docket Entry 53-10 at 15-17.)

In July 2001, Horton filed a second appeal of his termination to MSPB alleging discrimination based on whistleblower reprisal. (Docket Entry 53-13.) The Administrative Judge dismissed Horton's appeal based upon the Negotiated Settlement Agreement discussed below. (Docket Entry 53-14 at 3-5.) This became the final decision of the MSPB Board on May 10, 2002. (Docket Entry 53-14 at 26-29.) It does not appear that Horton appealed either of these decisions.



that processing of the complaint be continued for the point of processing ceased under the terms of this settlement agreement." (Id.)

In 2001, pursuant to the terms of the Negotiated Settlement Agreement,[4] Horton filed an appeal with the Equal Employment Opportunity Commission's ("EEOC's") Office of Federal Operations ("OFO") alleging that the defendant had breached the Negotiated Settlement Agreement ("OFO Breach of Contract Appeal"). The OFO issued a decision determining that no breach occurred. (Docket Entry 53-20.) Thereafter, Horton filed an action against the defendant in the United States District Court for the District of Columbia, which was transferred to the District of South Carolina on June 27, 2003. See Horton v. Roche, C/A No. 3:03-2443-MBS. In that matter, Horton alleged that the defendant breached the terms of the Negotiated Settlement Agreement. Specifically, Horton alleged that he interviewed for the position of library technician with the Executive Office of the President in March 2001 and with the Immigration and Naturalization Service in April 2001, and, further, that he was offered a position as a technical information specialist with the Air Intelligence Agency in April 2001 and as a librarian with the United States Department of State in April 2002. Horton contended that these interviews and offers were withdrawn or denied after these agencies contacted officials at Shaw AFB and received negative references about Horton. Horton further alleged in C/A No. 3:03-2443-MBS that in August 2001, while working as a librarian at Fort Bragg in North Carolina, he was the victim of an "anti-EEO

---

[4]The Negotiated Settlement Agreement provided that if Horton believes that Shaw AFB failed to comply with the terms of the agreement and after attempting to resolve the matter with Shaw AFB, he "may appeal to the Equal Employment Opportunity Commission for a determination as to whether Shaw Air Force Base has complied with the terms of this settlement agreement." (Docket Entry 53-11.)

terrorist attack," which violated the anti-reprisal provision of the Negotiated Settlement Agreement.[5] Essentially, Horton alleged that he was wrongfully arrested, treated inhumanely, involuntarily committed to an insane asylum after a psychiatrist was coerced to certify that Horton was insane, and terminated from his position at Ft. Bragg. See generally Horton v. Roche, C/A No. 3:03-2443-MBS (Report and Recommendation, Docket Entry 31 & Order, Docket Entry 40).

On July 18, 2006, Horton's complaint in C/A No. 3:03-2443-MBS was dismissed pursuant to a consent order following mediation ("Consent Order"). The Consent Order states that Horton's "Title VII complaint would be reasserted from the point processing ceased under the terms of the settlement agreement. Specifically, personnel at Shaw Air Force Base will reinstate [Horton's] administrative complaint as it was on September 13, 2000, and the administrative processing of [Horton's] EEO complaint will resume at that point." (Docket Entry 53-16.) Thus, in effect, the Consent Order revived or reinstated Horton's 2000 EEO Title VII Complaint.

Thereafter, it appears that Horton's former employer re-opened Horton's EEO case, and on August 28, 2006, Horton amended his complaint to include four additional charges. (Horton Investigative File, Docket Entry 53-19; September 11, 2006 Mem. to Horton, Docket Entry 53-21 at 2.) By letter dated September 11, 2006, the Air Force notified Horton of the partial dismissal of some of the charges included in his amended complaint due to untimely EEO counselor contact or previous adjudication by the EEOC in Horton's OFO Breach of Contract Appeal. (Docket Entry 53-21 at 2-3.) On January 29, 2007, Horton requested a Final Agency Decision without an administrative hearing before the EEO. (Docket Entry 53-17.) On December 5, 2007, a Final

---

[5]By order dated March 11, 2005, the court granted summary judgment in favor of the defendant on this claim. See Horton v. Roche, C/A No. 3:03-2443-MBS (Docket Entry 40). This order was not vacated by the subsequent Consent Order.



Agency Decision was issued. The decision states that the accepted remaining claims that were considered by the EEO included:

> Whether the complainant was discriminated against and harassed based on race (Hispanic), sex (male), and/or reprisal (prior EEO activity) when:
> 1. on March 20, 2000, a medical assessment was done without his approval;
> 2. no performance rating was provided;
> 3. guidelines for preparing the AF Form 860A were not followed;
> 4. on March 20, 2000, he was given a "bar and ban" letter by the Wing Commander;
> 5. on March 20, 2000, he was fired from his second job as the Assistant Librarian at the Recreation Services Library.

(Docket Entry 53-18 at 2-3.) The decision emphasized that Horton's "termination from his employment as a Library Technician (Medical) . . . at Shaw AFB was never accepted as a claim in this complaint." (Id. at 4.) The decision found that "the agency articulated legitimate, nondiscriminatory reasons for its challenged actions that were not proven by a preponderance of the evidence to be a pretext for discrimination." (Id. at 13.) The decision also found that Horton failed to establish that "he was subjected to harassment motivated by prohibited discrimination." (Id.)

## DISCUSSION

**A.      Summary Judgment Standard**

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported Motion for Summary Judgment; the requirement is that there be no *genuine* issue of *material fact*." Ballinger v. N.C. Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir. 1987). A fact is "material" if proof of its existence or non-

existence would affect the disposition of the case under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. Id. at 257.

In discrimination cases, a party is entitled to summary judgment if no reasonable jury could rule in the non-moving party's favor. Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 645 (4th Cir. 2002). The court cannot make credibility determinations or weigh the evidence, but the court should examine uncontradicted and unimpeached evidence offered by the moving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). The court must determine whether a party's offered evidence is legally sufficient to support a finding of discrimination and look at the strength of a party's case on its own terms. The Reeves Court stated:

> Certainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational fact-finder could conclude that the action was discriminatory. For instance, an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred.

Reeves, 530 U.S. at 148. The Court of Appeals for the Fourth Circuit has stated that the Reeves Court instructs more broadly regarding the factors "on which the appropriateness of a judgment as a matter of law will depend in any case and will include 'the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employers' case and that properly may be considered on a motion for judgment as a matter of law.'" Dennis, 290 F.3d at 649 (quoting Reeves, 530 U.S. at 148-49)).

*PJG*

**B.	Exhaustion of Administrative Remedies**

Title VII creates a right of action for employees alleging "discrimination based on race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-16(a). Federal employees alleging discrimination "must, however, exhaust their administrative remedies before exercising this right." Laber v. Harvey, 438 F.3d 404, 415 (4th Cir. 2006). A federal employee does so by first contacting an EEO counselor "within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1). If, after meeting with a counselor, the employee wishes to continue with the complaint process, he must file a formal complaint, which the agency must investigate. 29 C.F.R. §§ 1614.106, 1614.108.

The Fourth Circuit Court of Appeals has summarized the process by which a federal employee may seek relief from unlawful discrimination as follows:

> A federal employee who believes that his employing agency discriminated against him in violation of Title VII must file an administrative complaint with the agency. See 29 C.F.R. § 1614.106. The agency investigates the claim, see 29 C.F.R. § 1614.108-109, and, if it concludes there was no discrimination, it issues a final agency decision to that effect, see 29 C.F.R. § 1614.110.

Laber, 438 F.3d at 416. The Fourth Circuit further noted that a federal employee "may then appeal the agency's decision to the OFO"[6] or may "opt-out of the administrative process at this point by filing a de novo civil action." Id. at 416 & n.9 (citing 29 C.F.R. §§ 1614.401(a), 1614.407(a); 42 U.S.C. § 2000e-16(c)). If the employee chooses to appeal the decision to the Commission, the employee may file a civil action with the district court after 180 days have elapsed from the filing

---

[6]OFO refers to the EEOC's Office of Federal Operations which reviews appeals of federal employees. For convenience, the court will simply refer to the OFO and the EEOC collectively as "the Commission."



of the appeal with the Commission or within 90 days of receiving the Commission's final decision. 29 C.F.R. § 1614.407(c) & (d).

The allegations contained in the administrative charge of discrimination generally limit the scope of any subsequent judicial complaint. King v. Seaboard Coast Line R.R., 538 F.2d 581, 583 (4th Cir. 1976) (stating that a subsequent civil suit "may encompass only the 'discrimination stated in the charge itself or developed in the course of a reasonable investigation of that charge.'") (quoting Equal Employment Opportunity Comm'n v. Gen. Elec., 532 F.2d 359, 365 (4th Cir. 1976)). Only those claims stated in the initial administrative charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent lawsuit. Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 963 (4th Cir. 1996) (affirming the district court's dismissal of some of the plaintiff's claims because they were outside the scope of her original EEOC charge and were therefore time barred). "Thus, a claim in formal litigation will generally be barred if the [administrative] charge alleges discrimination on one basis, such as race, and the formal litigation claim alleges discrimination on a separate basis, such as sex." Jones v. Calvert Group, Ltd., 551 F.3d 297, 300 (4th Cir. 2009).

Exhaustion of administrative remedies is a statutory prerequisite to properly invoke the jurisdiction of the federal court. See, e.g., Davis v. N.C. Dep't of Corr., 48 F.3d 134, 140 (4th Cir. 1995) (stating that "that receipt of, or at least entitlement to, a right-to-sue letter is a jurisdictional prerequisite"); Murphy v. West, No. 98-2308, 1999 WL 64284, *2 (4th Cir. 1999) (Table) ("Timely exhaustion of administrative remedies is a prerequisite to filing suit in federal court pursuant to Title VII."); see also 42 U.S.C. § 2000e-5(f). The Fourth Circuit has emphasized:

> The filing of an administrative charge is not simply a formality to be rushed through so that an individual can quickly file his subsequent . . . lawsuit. Rather, Congress intended the exhaustion requirement to serve the primary purposes of notice and conciliation. First, an administrative charge notifies the employer of the alleged discrimination. This notice gives the employer an initial opportunity to voluntarily and independently investigate and resolve the alleged discriminatory actions. It also prevents the employer from later complaining of prejudice, since it has known of the allegations from the very beginning. Second, the exhaustion requirement initiates agency-monitored settlement, the primary way that claims of discrimination are resolved.

Chacko v. Patuxent Institution, 429 F.3d 505, 510 (4th Cir. 2005) (citations omitted). As the EEO has the specific authority to investigate EEO complaints and take necessary action to reach a resolution of the claims, see 29 C.F.R. §§ 1614.106 et seq., permitting a federal complaint to include allegations that were outside the scope of the predicate EEO complaint would circumscribe the EEO's purpose as well as deprive the federal agency of notice of the plaintiff's charges. See Dorsey v. Pinnacle Automation Co., 278 F.3d 830, 838 (8th Cir. 2002) ("Allowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumscribe the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge, as surely as would an initial failure to file a timely EEOC charge." (internal quotation marks and citations omitted)). When a claim "raised under Title VII exceed[s] the scope of the [administrative] charge and any charge that would naturally have arisen from an investigation thereof," it is procedurally barred. Dennis v. County of Fairfax, 55 F.3d 151, 156 (4th Cir. 1995).

**C.    Discussion**

    **1.    Exhaustion**

Horton's Complaint in the instant case alleges that "[t]his action is brought pursuant to Title VII of the Civil Rights Act of 1964, as amended[,] for employment discrimination." (Compl.,

Docket Entry 1 at 2.) Horton also states under a heading entitled "Cause of Action" that "[t]he defendant has repeated[ly] violated Title VII of the Civil Rights Act of 1964 by engaging in direct and indirect acts of anti-EEO terrorism against the [plaintiff]." (Id. at 8.) The defendant has moved for summary judgment based on the fact that Horton's Title VII claims have not been administratively exhausted.

As stated above, following the remand resulting from the Consent Order ending C/A No. 3:03-2443-MBS and an EEO investigation, Horton requested a Final Agency Decision without an administrative hearing before the EEOC. (Docket Entry 53-17.) The EEO issued a Final Agency Decision which stated that only the following claims had been properly raised and considered in Horton's 2000 EEO Title VII Complaint:

> Whether the complainant was discriminated against and harassed based on race (Hispanic), sex (male), and/or reprisal (prior EEO activity) when:
> 1. on March 20, 2000, a medical assessment was done without his approval;
> 2. no performance rating was provided;
> 3. guidelines for preparing the AF Form 860A were not followed;
> 4. on March 20, 2000, he was given a "bar and ban" letter by the Wing Commander;
> 5. on March 20, 2000, he was fired from his second job as the Assistant Librarian at the Recreation Services Library.

(Docket Entry 53-18 at 2-3.) None of these claims are raised in Horton's instant federal Complaint, even construing his Complaint liberally. (Docket Entry 1.) For example, in paragraphs 1 and 3 of Horton's Complaint he alleges that he was wrongfully terminated from his position of Library Technician (Medical). Although Horton raised issues pertaining to termination from his Library Technician (Medical) position with the MSPB based on marital status discrimination and

whistleblower resprisal,[7] he did not raise any issues alleging that he was terminated from this position in violation of Title VII in connection with his EEO complaint. In fact, the Final Agency Decision emphasized that Horton's "termination from his employment as a Library Technician (Medical) . . . at Shaw AFB was never accepted as a claim in this complaint." (Docket Entry 53-18 at 4.) The Title VII claims raised by Horton in this case were not raised in his EEO Title VII Complaint, were not reasonably related to the EEO Title VII Complaint, and do not appear to have been developed by reasonable investigation of the EEO Title VII Complaint; therefore, the court has no jurisdiction to consider them in this lawsuit. See Evans, 80 F.3d at 963; see also Jones, 551 F.3d at 300 (stating that if a claim is not exhausted—by being "stated in the initial charge, reasonably related to the original complaint, or developed by reasonable investigation of the original complaint"—then the federal courts lack jurisdiction over the claim).

### 2. Breach of Contract

While Horton maintains that this is a Title VII action, his Complaint also appears to include numerous allegations of breach of contract based on the Negotiated Settlement Agreement, for which he seeks monetary damages. Specifically, Horton asserts that the defendant has breached the Negotiated Settlement Agreement on numerous occasions. (Compl. ¶¶ 8-11, 12-15, Docket Entry 1.) These allegations were the subject of Horton's previous lawsuit. See Horton v. Roche, C/A No. 3:03-2443-MBS. As discussed above, in that case, a Consent Order was entered into in which the

---

[7]Generally, "[a]ny employee or applicant for employment who is adversely affected by a final order or decision of the [Merit Systems Protection] Board under the provisions of 5 U.S.C. 7703 may obtain judicial review in the United States Court of Appeals for the Federal Circuit." 5 C.F.R. § 1201.120; (see also MSPB Final Order dated Sept. 21, 2000, Docket Entry 53-10 at 16 & MSPB Final Order dated May 10, 2002, Docket Entry 53-14 at 27 (both stating that the decision may be appealed the United States Court of Appeals for the Federal Circuit)).

parties agreed that Horton's "Title VII complaint would be reasserted from the point processing ceased under the terms of the settlement agreement. Specifically, personnel at Shaw Air Force Base will reinstate [Horton's] administrative complaint as it was on September 13, 2000, and the administrative processing of [Horton's] EEO complaint will resume at that point." (Docket Entry 53-16.)

Horton has already received his remedy for an alleged breach of the Negotiated Settlement Agreement. Under the terms of the Negotiated Settlement Agreement, the only remedies available to Horton in the event of a breach are: (1) that the terms of the Negotiated Settlement Agreement be specifically implemented, or (2) that the "processing of the complaint be continued from the point of processing ceased under the terms of this settlement agreement." (Docket Entry 53-11.) Further, the exclusivity of these remedies for employees alleging that an agency has breached a settlement agreement resulting from an EEO complaint are set forth by law in 29 C.F.R. § 1614.504(a), which states in pertinent part that "[t]he complainant may request that the terms of the settlement agreement be specifically implemented or, alternatively, that the complaint be reinstated for further processing from the point processing ceased." Accordingly, not only is Horton not entitled to monetary damages for any alleged breach of the Negotiated Settlement Agreement, but, further, there are no other remedies available to Horton. In his previous federal case, Horton elected to have his case reinstated for further processing from the point where processing ceased. He has obtained that

Page 14 of 17

*PJG*

remedy. There is no further relief that Horton may be provided on a claim for breach of the Negotiated Settlement Agreement.[8]

    **3.    New Claims**

In Horton's cross-motion for summary judgment, he raises a new claim that was not alleged in his Complaint. Horton argues that the defendant retaliated against him after "he made inquires about $20,000 in missing operating funds." (Docket Entry 59 at 47.) However, there are no allegations of retaliation in Horton's Complaint and this claim of retaliation is therefore not properly before this court.[9] See Bridgeport Music, Inc. v. WM Music Corp., 508 F.3d 394, 400 (6th Cir. 2007) (holding that a party may not expand its claims to assert new theories in response to summary judgment); White v. Roche Biomedical Labs., Inc., 807 F. Supp. 1212, 1216 (D.S.C. 1992) (noting that "a party is generally not permitted to raise a new claim in response to a motion for summary judgment").

---

[8]Further, the defendants were awarded summary judgment with regard to Horton's claim that the defendant violated the Negotiated Settlement Agreement based on the 2001 incident at Fort Bragg/Pope Air Force Base. (See Order dated March 11, 2005, Docket Entry 40, Horton v. Roche, C/A No. 3:03-2443-MBS.) Consequently, this precise issue has already been litigated and decided adversely to Horton. Thus, this action is barred by the doctrines of res judicata and collateral estoppel. See Orca Yachts, L.L.C. v. Mollicam, Inc., 287 F.3d 316, 318 (4th Cir. 2002) (discussing the doctrine of res judicata); Sedlack v. Braswell Servs. Group, Inc., 134 F.3d 219, 224 (4th Cir. 1998) (listing elements required to establish collateral estoppel).

[9]Even if this court were to construe Horton's cross-motion as a proposed amendment to the Complaint, these new allegations are insufficient to state a claim for relief under Title VII. Generally, whistleblowing is not a protected activity under Title VII. Jamil v. Sec'y, Dep't of Defense, 910 F.2d 1203, 1207 (4th Cir. 1990) (stating that if the discharge was motivated by a plaintiff's whistleblowing about mismanagement and cronyism as he maintained, his Title VII retaliatory discharge claim failed as matter of law because Title VII does not prohibit retaliation for complaining about such). Therefore, any amendment to add such a claim to his Complaint would be futile. See Foman v. Davis, 371 U.S. 178, 182 (1962) (noting that a district court does not abuse its discretion by denying leave to amend where there is any apparent or declared reason, such as "futility of amendment").

Page 15 of 17

*PJG*

**RECOMMENDATION**

For the forgoing reasons, the defendant is entitled to judgment as a matter of law. Horton has failed to properly exhaust the Title VII claims contained in his Complaint, as they are different from the ones raised in his EEO Title VII Complaint. Therefore, he has not properly invoked the court's jurisdiction with regard to those claims. See Jones, 551 F.3d at 300; Evans, 80 F.3d at 963. Moreover, there is no further relief available to Horton for his breach of contract claim based upon the Negotiated Settlement Agreement. Finally, Horton's cross-motion for summary judgment contains a new claim of retaliation that is not properly before this court. See Bridgeport Music, Inc., 508 F.3d at 400; White, 807 F. Supp. at 1216. Accordingly, the defendant's motion for summary judgment (Docket Entry 53) should be granted and Horton's cross-motion for summary judgment (Docket Entry 59) should be denied.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

July 28, 2009
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court judge need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985).